Fuchsberg, J.
(concurring). To imply a consciousness of guilt in a defendant because he sought to avail himself of his right to counsel is not only a blatant appeal to lay prejudice but the exaction of an impermissible price for the exercise of a fundamental privilege. The prosecutor certainly should have known better. I am therefore prepared to join in reversing on that account.
But it brooks reality to do so on the ground that the juror looked to see what she could observe from the second seat of her own van. Even assuming it played any role in the deliberations — and there was no competent proof of when, if at all, it was related to the other jurors — in a larger sense it was no more than a small item of "background experience”, possession of which is an important, highly valued and expected strength of a jury.
In persuading one another to their respective viewpoints, and indeed in resolving their own doubts, jurors, like other people, employ the products of their education and experience, *396 frequently argue by analogy and commonly make comparisons with things at hand. That is essentially all that happened in this case. Consequently, if the juror episode here is to contaminate the verdict, hardly any determination of facts, by Judge or jury, would be impervious to such attack.
To get right down to the present case, if instead of making her unrehearsed observation from her car, the juror had made one through a window of the jury room, in or out of the presence of the other jurors and whether from a perch on a chair or while in a Crouch that roughly simulated the angle of vision described by the police officer — or if a Judge trying a case without a jury essayed the same thing in chambers — can it be said the jury verdict or judicial decision must be invalidated? We all take renewed notice of everyday things when there is special reason to do so; so, it would be nothing less than natural for triers of facts, while a question as to what was observable from a car was yet fresh in mind, to be conscious, and therefore more than usually observant, of what was to be seen from their own vehicles, perhaps even as they were driving home from the courthouse. Similarly, jurors exposed to a courtroom description of reckless driving would not only be more likely to operate their own vehicles more carefully immediately thereafter, but also, at least for the nonce, could be expected to be more critical of others on the highway.
Or, suppose they had just heard testimony concerning a traumatically induced limitation of motion of a litigant’s limb or of a narrowing of the scope of a party’s peripheral vision. Would they not be likely to examine and make comparisons with their own perhaps atypical ranges of motion, doing so not infrequently even while the witness is still on the stand? Would these then be objectionable new "experiences”? And, if they are, how do we distinguish them from those enjoyed in the past by jurors who are so aware of themselves and their environment that, for instance, they already know the views from their cars, the poor driving habits of other motorists or the peculiarities of their own bodies?
Now, there is no reason to believe that her fellow jurors were unaware of the unscientific, informal, unplanned nature of the juror’s observation here, and that it was made at a different time and place, of a different car and driver, from a different make of vehicle and in different circumstances from those that prevailed when the police viewed the defendant. If *397 she had not made these distinctions clear herself they could hardly have been lost on the others. For, it is a mistake to underestimate the intelligence of a jury, which, when all is said and done, is a collective body with the unique advantage of having the brightest of 12 or 6 minds, as the case may be, at its disposal at all times. Instead, whatever she had to say undoubtedly ranked no higher than the experience-based arguments that inevitably punctuate jury deliberations. Under all these circumstances, by no means can it be equated with the re-enactment of the event either in whole or in part.
Accordingly, we should indorse the Appellate Division’s wise view that the juror was but "spontaneously dr[awing] on a common everyday situation with which she was familiar, in order to test the detective’s veracity”. For, our failure to do so will either help sap the jury system of its vitality or encourage the blinking of normal and sensible conduct, efforts to suppress which can be expected in the end to but fall of their own weight.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones and Meyer concur with Judge Wachtler; Judge Fuchsberg concurs in a separate opinion.
Order reversed, etc.